**O**

CLOSED

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CHANG SUP HAN | Case No. 2:13-cv-1524-ODW |
| Debtor. | Bankruptcy Case No. 2:11-bk-30025-RK<br>Adversary Case No. 2:11-ap-2632-RK |
| ALMA L. CASTRO; ANGELINA MARQUEZ JUAREZ; ROSA MARIA CAMACHO FERNANDEZ,<br><br>    Appellants,<br>  v.<br>CHANG SUP HAN, individually and dba GOLD MAINTENANCE, INC.<br><br>    Appellees. | **ORDER** |

Appellants Alma Castro, Angelina Marquez Juarez, and Rosa Maria Camacho Fernandez appeal an order from the bankruptcy court discharging the debts owed them by Debtor Chang Sup Han. Han's debts arose in the context of his employment of Appellants in the janitorial-services industry—specifically, extensive violations of wage-and-hour laws and his failure to abide by his promises to pay them minimum wage. Appellants contend that the bankruptcy court erred in failing to hold that Han's debts are nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). As discussed below, the Court agrees that Appellants' debts are nondischargeable under § 523(a)(2)(A), and consequently **REVERSES** and **REMANDS** the matter to the bankruptcy court.

# I.   JURISDICTION

This Court has jurisdiction to hear appeals for judgments, orders, and decrees entered in intra-district bankruptcy cases referred to them under 28 U.S.C. § 157. 28 U.S.C. § 158.  The judgment in this adversary proceeding is final, and was entered in a bankruptcy proceeding within this District.   Accordingly, the judgment is appealable to this Court under 28 U.S.C. § 158.

# II.   BACKGROUND

Chang Sup Han has been working in the cleaning industry in the United States for twenty years.  (Mem. Decision on Compl. to Determine the Dischargeability of Certain Debt ["Decision"] 11.)  Han started his own janitorial-cleaning service, Gold Maintenance, Inc., approximately ten years ago.   (*Id.*)   Han operated Gold Maintenance and supervised each of his employees, the Appellants in this case.  (*Id.* at 3.)  Gold Maintenance employed Castro from April 16, 2007 to October 10, 2008; Juarez from September 13, 2006 to May 4, 2008; and Fernandez from December 23, 2007 to May 4, 2008.  (*Id.* at 2–3.)  Han fully controlled Appellants' wages, hours, and working conditions, and was directly responsible for the claimed underpayment of wages.  (*Id.* at 3.)  Han typically required them to work thirteen to fourteen hours per night, five to seven nights per week.  (*Id.*)

Appellants testified at trial that Han promised to pay them "minimum wage," but they were undercompensated based on the applicable minimum-wage rates.  (*Id.*) Han never paid them for overtime or double-time hours, nor were they paid for their travel time during work hours.  (*Id.*)  Yet over the same 2006–2008 period that Han employed Appellants, his bank records show that he wrote over 280 checks to himself, to no addressee, or to "Cash"—in excess of $420,000.  (Appellants' Br. 7–8.)  Han endorsed and cashed most of the checks himself.  (*Id.* at 8.)

In 2008, Appellants filed separate administrative-law claims with the California Labor Commissioner alleging Han owed them (1) unpaid wages for regular-time, overtime  and  double-time  work,  (2)  unpaid  wages  for  meal  and  rest  periods,

(3) interest on the wages under California Labor Code section 98.1, and (4) waiting-time penalties under California Labor Code section 203.  (Decision 5.)  On January 29, 2010, the Labor Commissioner entered separate decisions for each Appellant on these claims, which were confirmed by the Los Angeles County Superior Court.  (*Id.*)  The Labor Commissioner found that Appellants were employees (not independent contractors) of Gold Maintenance; had established their hours worked by their personal time records; and were entitled to unpaid wages, interest, and penalties.  (*Id.* at 5–6.)  The Commissioner also found that Han should have known of the duty to pay the wages and volitionally failed to do so.  (*Id.* at 6.)  Accordingly, the Labor Commissioner awarded Castro, Juarez, and Fernandez a total of $34,323.62, $48,253.76, and $12,844.21, respectively.  (*Id.*)

On May 7, 2011, Han filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  (*Id.* at 2.)  On August 15, 2011, Appellants filed an adversary proceeding against Han seeking to have their Labor Code judgments deemed non-dischargeable under 11 U.S.C. §§523(a)(2)(A), 523(a)(4), and 523(a)(6).  (*Id.*)  The bankruptcy court held that Appellants had not shown by a preponderance of the evidence that Han's debts should be exempt from discharge under these sections.  This appeal followed.

### III.   ISSUES ON APPEAL

Appellants argue that the bankruptcy court erred by failing to hold that: (1) Han's debts to them are nondischargeable under Bankruptcy Code section 523(a)(2)(A) as debts obtained by false pretenses, a false representation, or actual fraud; and (2) the debts are nondischargeable under Bankruptcy Code section 523(a)(6) because these debts arose from willful and malicious injury to Appellants.[1]

///

///

---

[1] Appellants also aver the bankruptcy court erred by accepting Han's ignorance of the law and ignoring evidence of Han's significant cash flow.  Given their relevance to § 523(a)(2)(A), the Court need not address the issues separately.

3

## IV.   LEGAL STANDARD

The question of whether a claim is excepted from discharge under § 523(a)(2)(A) presents mixed issues of law and fact which this Court reviews de novo. *In re Diamond*, 285 F.3d 822, 826 (9th Cir. 2001). The bankruptcy court's conclusions of law are reviewed de novo and its findings of fact are reviewed for clear error. *In re Hamada*, 291 F.3d 645, 649 (9th Cir. 2002). A court's factual determination is clearly erroneous if it is illogical or implausible, or if it lacks "support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1261 (9th Cir. 2009) (en banc) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 577 (1985)).

## V.   DISCUSSION

### A.   Nondischargeability under section 523(a)(2)(A)

Section 523(a)(2)(A) provides that an individual debtor will not be discharged "from any debt . . . for money, property, services . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud." To demonstrate that a debt should be exempt from discharge under § 523(a)(2)(A), a creditor must prove five elements: (1) misrepresentation, fraudulent omission, or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the debtor's statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by her reliance on the debtor's statement or conduct. *In re Weinberg*, 410 B.R. 19, 35 (B.A.P. 9th Cir. 2009). The creditor must establish all five elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

#### 1.   *Misrepresentation*

The bankruptcy court found that Appellants proved by a preponderance that Han represented that he would pay them wages at the "legal minimum wage rate." (Decision 9.) Upon review of the record, the Court agrees with this assessment.

///

2.      *Knowledge of the falsity or deceptiveness of the statement*

The remainder of the bankruptcy court's decision with regard to § 523(a)(2)(A) is premised upon a conclusion that Appellants failed to show that Han knew of the falsity or deceptiveness of his statements.   A plaintiff must establish by a preponderance of the evidence that "a false representation has been made without belief in its truth or recklessly, careless of whether it is true or false."  *In re Kong*, 239 B.R. 815, 826–27 (B.A.P. 9th Cir. 1999).  This reckless disregard for the truth of a representation can also be expressed as "reckless indifference to his actual circumstances."  *Id.* at 826 (citing *In re Anastas*, 94 F.3d 1280, 1286 (9th Cir. 1996)).

The bankruptcy court found that Appellants had not met this burden with regard to Han's representations that he would pay them "minimum wage."  (Decision 13–14.) The bankruptcy court credited Han's testimony that he "thought he paid [Appellants] their appropriate wages at the prevailing minimum-wage rates during their employment" and that he did not understand the definition of hours worked—that he was required to calculate and compensate travel time and other items as work time. (*Id.* at 9, 10.)  The bankruptcy court concluded that Han was credible and that he acted out of negligence.  (*Id.* at 10, 11.)

But Han is not a newcomer to this country; he has over twenty years of experience in the U.S. janitorial industry.  (*Id.* at 11.)  Han's English may have been poor, but he knew enough about business law to have a certified public accountant draft articles of incorporation, pay Appellants as independent contractors rather than as employees, provide Appellants with 1099-MISC forms each year, and obtain workers'-compensation insurance—while reporting to his insurance carrier that Gold Maintenance had only two employees, himself and his son.  (*Id.*; Appellants' Br. at 16–17).  With cash flow of approximately $420,000 over the relevant two-year period, Han's business acumen clearly paid off.  (Appellants' Br. at 7–8.)

Despite this experience and knowledge, the bankruptcy court found that Han "understood [he] was to pay $8 per hour and did so," and that "[he] basically paid

minimum wage" per hour of work, despite his failure to pay wages for travel time, meal periods, and rest periods. (Decision 9–10.) Yet the bankruptcy court overlooked a crucial inference about Han's knowledge that can be reasonably drawn from this testimony. Han employed Appellants variously from 2007 to 2008. (*Id.* at 2–3.) On September 12, 2006, and effective January 1, 2008, the California Legislature raised the minimum wage for all industries from $7.50 to $8.00 per hour. Cal. Lab. Code section 1197; Minimum Wage Order MW-2007, *available at* http://www.dir.ca.gov/IWC/Minwage2007.pdf. That Han knew to begin paying the minimum-wage rate of $8.00 instead of $7.50 per hour shows at least some familiarity with California minimum-wage laws. This suggests that his "minimum wage" representations, in light of his failure to further inquire into the law's additional requirements and definitions, was reckless and that he was careless of the truth or falsity of his representations.

Han's business conduct and experience shows that he was a sophisticated businessperson with at best, a selective knowledge of applicable laws. This cannot be reconciled with his purported ignorance of wage-and-hour laws. Thus, the Court concludes that the bankruptcy court erred in its determination that Appellants failed to demonstrate by a preponderance the knowledge-of-the-falsity element.

    *3.    Intent to deceive*

Whether or not a defendant satisfies the third element of § 523(a)(2)(A)—intent to deceive—is a question of fact. *In re Rubin*, 875 F.2d 755, 758 (9th Cir. 1989). Since a debtor will rarely admit to his fraudulent intentions, a creditor must rely on circumstantial evidence to infer an intention to deceive. *In re Eashai*, 87 F.3d 1082, 1090 (9th Cir. 1996). A court may infer intent to deceive from a false representation. *In re Rubin*, 875 F.2d at 759.

The bankruptcy court opined, "While ignorance of the law may not be a defense to Han's liability for violations of the Labor Code for failure to pay proper wages to [Appellants], it may be considered regarding whether he had the subjective intent to

deceive plaintiffs."  (Decision 15.)  The bankruptcy court then held that because Han testified that he did not understand the law, he lacked subjective intent to deceive Appellants.  (*Id.*)

As discussed above, Appellants established that Han recklessly disregarded the truth of his representations.  Coupled with the fact that Han had Appellants work thirteen to fourteen hours per day, five to seven days per week—and taking advantage of them by not paying for overtime, travel time, meal periods, or rest periods—this suffices to constitute intent to deceive under § 523(a)(2)(A).  *In re Gertsch*, 237 B.R. 160, 167–68 (B.A.P. 9th Cir. 1999) ("[I]ntent to deceive can be inferred from the totality of the circumstances, including reckless disregard for the truth.").

### 4.    *Justifiable reliance*

Appellants must also show that their reliance on Han's representations that he would pay them "minimum wage" was justified.  Reliance need not reach a level of "reasonableness" to establish nondischargeability under § 523(a)(2)(A), but must still be justifiable.  *Field v. Mans*, 516 U.S. 59, 73–76 (1995).  "[A] person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation."  *Id.* at 70 (internal quotation marks omitted).

The Court therefore sees no issue with Appellants' ignorance of the Labor Code, since they were under no obligation to investigate Han's statements.  To the contrary, their ignorance may have appealed to Han when he decided to hire them. Furthermore, the fact that Appellants were subjected to work schedules consisting of thirteen to fourteen hours per day, five to seven days per week—all while receiving sub-par wages—does not establish that Appellants knew Han was breaking the law or that he was undercompensating them.  Nor does their willingness to continue to work under these conditions establish that their justifiable reliance was unwarranted, as the bankruptcy court held.  (Decision 16.)  Their willingness to continue to work for Han is justified in light of their ignorance and the fact that Han at least paid them for each

hour of work under his definition of work.    The Court finds that Appellants'
expectation that Han would follow California's minimum-wage laws and pay them
accordingly is justifiable.

     *5.*    *Proximate causation*

     Finally, Appellants must prove that they sustained the alleged losses as the
proximate result of Han's representations.   *In re Eashai*, 87 F.3d at 1086.
"[P]roximate cause entails (1) causation in fact, which requires a defendant's
misrepresentations to be a substantial factor in determining the course of conduct that
results in loss [to Appellants] . . . and (2) legal causation, which requires [Appellants']
loss to reasonably be expected to result from reliance." *In re Bixel*, 215 B.R. 772, 777
(Bankr. S.D. Cal. 1997) (internal quotation marks omitted).    In determining proximate
cause, however, courts must refrain from relying on speculation to determine whether
and to what extent a creditor would have suffered a loss absent fraud. *In re Siriani*,
967 F.2d 302, 306 (9th Cir. 1992).

     Han's employment of Appellants and his promise to pay them minimum wage
were clearly substantial factors in Appellants' losses, establishing the first element of
proximate cause.    The second element is also satisfied, since Appellants' losses
(unpaid wages) were a direct result of their reliance on Han's representations that he
would pay them minimum wage.    Thus, Appellants' damages were proximately
caused by their reliance on Han's representations.

     Accordingly, because Appellants have shown by a preponderance of the
evidence that their unpaid wages should be exempt from discharge under
§ 523(a)(2)(A), the judgment of the bankruptcy court is **REVERSED** and the case is
**REMANDED** for further proceedings consistent with this order.

**B.**    **Nondischargeability under section 523(a)(6)**

     Because the Court finds that Han's debts should be nondischargeable
§ 523(a)(2)(A), the Court declines to opine on Appellants' alternative argument that
Han's debts are nondischargeable under § 523(a)(6).

# VI.    DISPOSITION

The judgment of the bankruptcy court is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this order.

**IT IS SO ORDERED.**

July 8, 2013

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**